TUCKER ELLIS LLP
DANIEL J. KELLY SBN 145088
daniel.kelly@tuckerellis.com
201 Mission Street, Suite 2310
San Francisco, CA 94105
Telephone:   415.617.2400
Facsimile:   415.617.2409

Attorneys for Plaintiff
RUSSELL REYNOLDS ASSOCIATES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL REYNOLDS ASSOCIATES, INC., | Case No. 2:23-cv-10280 |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT AND COMMON COUNTS** |
| v. | |
| FARADAY FUTURE INTELLIGENT ELECTRIC, INC. and FARADAY&FUTURE INC., | |
| Defendants. | |

Plaintiff Russell Reynolds Associates, Inc. ("RRA") alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil action for breach of contract and common counts arising out of the breach of a written executive search services agreement by defendants Faraday Future Intelligent Electric, Inc. and Faraday&Future Inc. (collectively "Faraday Future Defendants").

2.     Plaintiff RRA seeks damages in the sum of $206,032.26.

## JURISDICTION AND VENUE

3.     This is a civil action for breach of contract and common counts.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

is a civil action between a citizen of New York and citizens of Delaware and California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    This Court has personal jurisdiction over the Faraday Future Defendants because they have had a continuous, systematic, and substantial presence within the Central District of California and have engaged in conduct within this district, including committing the acts that give rise to the claims alleged by RRA and causing damage to it within this district.

5.    Venue is proper in this district under 28 U.S.C. § 1391 in that the claims arise in this judicial district, Faraday Future Defendants may be found and have transacted business in this judicial district, and the injury RRA suffered took place in this judicial district.

## PARTIES

6.    Plaintiff RRA is a corporation organized and existing under the laws of the State of New York with its principal place of business in New York.  RRA is authorized to do business and is doing business in the State of California.

7.    Defendant Faraday Future Intelligent Electric, Inc is a Delaware corporation with its principal place of business in Gardena, California.  RRA is informed and believes that Faraday Future Intelligent Electric, Inc is authorized to do business in the State of California.

8.    Defendant Faraday&Future Inc is a California corporation with its principal place of business in Gardena, California.  RRA is informed and believes that Faraday&Future Inc is authorized to do business in the State of California.

9.    On information and belief, the Faraday Future Defendants do business in California as "Faraday Future, Inc." ("Faraday Future").  At all times relevant, the Faraday Future Defendants operated as agents and representatives of each other and held themselves out as one business entity.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## COUNT ONE

### (Breach of Contract as against Faraday Future Defendants)

10.    RRA incorporates the allegations contained in paragraphs 1-9 by reference.

### Chief Financial Officer Search

11.    On or about April 15, 2022, RRA and Faraday Future Defendants entered into a written agreement whereby RRA agreed to provide executive search services to recruit a Chief Financial Officer (CFO) for Faraday Future ("CFO Search Agreement"). Under the CFO Search Agreement, the Faraday Future Defendants agreed to pay RRA a fee of one-third of the hired candidate's Total Compensation and agreed to pay a $140,000.00 Retainer and a $9,000.00 Administrative Charge.  Faraday Future Defendants agreed to pay the Retainers in three equal installments, invoiced at the initiation of the search and at 45 and 90 days thereafter.  A true and correct copy of the CFO Search Agreement is attached as **Exhibit A** and incorporated by reference.

12.    Pursuant to the CFO Search Agreement, RRA commenced performance of the Chief Financial Officer search (Assignment 2204-163NA) ("CFO Search") in or about April 2022.

13.    On or about April 26, 2022, RRA sent Faraday Future Defendants its invoice no. 271414 in the amount of $49,666.00 representing the First Interim Fee and one-third of the Administrative Charge for the CFO Search.  Faraday Future Defendants did not dispute this invoice and paid it.  A true and correct copy of invoice no. 271414 is attached as **Exhibit B** and incorporated by reference.

14.    On or about June 3, 2022, RRA sent Faraday Future Defendants its invoice no. 271415 for $49,666.00 representing the Second Interim Fee and one-third of the Administrative Charge for the CFO Search.  Faraday Future Defendants did not dispute this invoice.  A true and correct copy of invoice no. 271415 is attached as **Exhibit C** and incorporated by reference.

15.    On or about July 18, 2022, RRA sent Faraday Future Defendants its invoice no. 271416 for $52,392.25 representing the Third Interim Fee and one-third of the

Administrative Charge and Candidate Expenses for the CFO Search. Faraday Future Defendants did not dispute this invoice. A true and correct copy of invoice no. 271416 is attached as **Exhibit D** and incorporated by reference.

16.     On or about October 17, 2022, RRA sent Faraday Future Defendants its invoice no. 274750 for $1,252.43 representing Candidate Expenses. Faraday Future Defendants did not dispute this invoice. A true and correct copy of invoice no. 274750 is attached as **Exhibit E** and incorporated by reference.

17.     The total amount due for the CFO Search is $152,976.68, of which $49,666.00 was paid, leaving a net balance due of $103,310.68 for the CFO Search.

### Chief Human Resources Officer Search

18.     On or about April 15, 2022, RRA and Faraday Future Defendants entered into an additional written agreement whereby RRA agreed to provide executive search services to recruit a Chief Human Resources Officer ("CHRO") for Faraday Future ("CHRO Search Agreement" and collectively with the CHRO Search Agreement the "Faraday Search Agreements")). Under the CHRO Search Agreement, the Faraday Future Defendants agreed to pay RRA a fee of one-third of the hired candidate's Total Compensation and agreed to pay a $140,000.00 Retainer and a $9,000.00 Administrative Charge. Faraday Future Defendants agreed to pay the Retainers in three equal installments, invoiced at the initiation of the search and at 45 and 90 days thereafter. A true and correct copy of the CHRO Search Agreement is attached as **Exhibit F** and incorporated by reference.

19.     Pursuant to the CHRO Search Agreement, RRA commenced performance of the Chief Human Resources Officer search (Assignment 2204-175NA) ("CHRO Search" and together with the CFO Search the "Faraday Searches") in or about April 2022.

20.     On or about April 26, 2022, RRA sent Faraday Future Defendants its invoice no. 271460 in the amount of $49,666.00 representing the First Interim Fee and one-third of the Administrative Charge for the CHRO Search. Faraday Future Defendants did not

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

COMPLAINT FOR BREACH OF CONTRACT AND COMMON COUNTS

dispute this invoice and paid it.  A true and correct copy of invoice no. 271460 is attached as **Exhibit G** and incorporated by reference.

21.    On or about June 6, 2022, RRA sent Faraday Future Defendants its invoice no. 271461 for $49,666.00 representing the Second Interim Fee and one-third of the Administrative Charge for the CHRO Search.  Faraday Future Defendants did not dispute this invoice.  A true and correct copy of invoice no. 271461 is attached as **Exhibit H** and incorporated by reference.

22.    On or about July 19, 2022, RRA sent Faraday Future Defendants its invoice no. 271462 for $50,047.81 representing the Third Interim Fee and one-third of the Administrative Charge, Candidate Expenses and Other Assignment Related Expenses for the CHRO Search.  Faraday Future Defendants did not dispute this invoice.  A true and correct copy of invoice no. 271462 is attached as **Exhibit I** and incorporated by reference.

23.    On or about September 20, 2022, RRA sent Faraday Future Defendants its invoice no. 275686 for $652.66 representing Candidate Expenses and Other Assignment Related Expenses for the CHRO Search.  Faraday Future Defendants did not dispute this invoice.  A true and correct copy of invoice no. 275686 is attached as **Exhibit J** and incorporated by reference.

24.    On or about December 20, 2022, RRA sent Faraday Future Defendants its invoice no. 279227 for $2,355.11 representing Candidate Expenses for the CHRO Search.  Faraday Future Defendants did not dispute this invoice.  A true and correct copy of invoice no. 279227 is attached as Exhibit K and incorporated by reference.

25.    The total amount due for the CHRO Search is $150,032.47 of which $49,666.00 was paid, leaving a net balance due of $100,366.47 for the CHRO Search.

26.    Faraday Future Defendants breached the agreement by failing to pay the amount of $206,032.26 to RRA for the Faraday Searches.

27.    RRA has performed all obligations to defendant except those obligations it was prevented or excused from performing.

COMPLAINT FOR BREACH OF CONTRACT AND COMMON COUNTS

012567\000003\1656049.1

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

28.    RRA suffered damages legally caused by Faraday Future Defendants' breach of the agreement.  RRA performed services for Faraday Future Defendants under the Faraday Search Agreements.  The balance due under the Faraday Search Agreements is $206,032.26, plus interest at the rate of 10% per annum.

## COUNT TWO

### (Common Counts as against Faraday Future Defendants)

29.    RRA incorporates the allegations contained in paragraphs 1-9 and 11-27 by reference.

30.    Plaintiff RRA alleges that Faraday Future Defendants became indebted to RRA within the last four years for work, labor, and services rendered at the special instance and request of Faraday Future Defendants and for which Faraday Future Defendants promised to pay RRA fees and expenses totaling $206,032.26.

31.    Plaintiff alleges that Faraday Future Defendants became indebted to RRA within the last four years for money paid, laid out, and expended to or for Faraday Future Defendants at Faraday Future Defendants' special instance and request.

32.    In accordance with its custom and practice, RRA sent Faraday Future Defendants invoices for its Interim Fees and expenses.  Faraday Future Defendants did not challenge or dispute the invoices within a reasonable time after receiving them.  The course of conduct between the parties resulted in an account stated in the amount of $206,032.26.

33.    The reasonable value of the services rendered by plaintiff and expenses incurred on behalf of Faraday Future Defendants is $206,032.26.  This amount remains due and unpaid despite plaintiff's demand, plus prejudgment interest at the rate of 10% per annum, according to proof.

COMPLAINT FOR BREACH OF CONTRACT AND COMMON COUNTS
012567\000003\1656049.1

WHEREFORE, plaintiff Russell Reynolds Associates, Inc. prays for judgment against defendants Faraday Future Intelligent Electric, Inc. and Faraday&Future Inc. as follows:

1.    For damages in the amount of $206,032.26;

2.    For interest on the damages at the rate of 10% per annum, according to proof;

3.    For costs of suit; and

4.    For such other relief as the court deems just and proper.

DATED:  December 6, 2023                    TUCKER ELLIS LLP


By: _____
        Daniel J. Kelly
        Plaintiff RUSSELL REYNOLDS
        ASSOCIATES, INC.

COMPLAINT FOR BREACH OF CONTRACT AND COMMON COUNTS
012567\000003\1656049.1

# EXHIBIT A

## Russell Reynolds
### ASSOCIATES

One Federal Street
26th Floor
Boston, MA 02110-1007 USA
Telephone +1-617-523-1111

**PRIVATE AND CONFIDENTIAL**                                    Stephen Schoenberger

**Mr.** Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S Figueroa Street
Gardena, CA 90248

April 15, 2022

Dear Mr. Vo:

Further to our discussions, this Engagement Letter details our understanding of your needs and the terms of our services.

## Our Understanding of the Situation

Faraday Future is looking to build its executive leadership team as it prepares to launch its flagship vehicle the FF 91 later this year. Faraday Future is looking to first recruit a new Chief Financial Officer and a Chief Human Resources Officer.

## Ideal Candidate Profile

Faraday Future is looking to recruit an experienced Chief Financial Officer with experience in investment banking that has transitioned to a CFO role in the technology industry or an electric vehicle manufacturer like Tesla. We would want to conduct a full calibration kick off meeting with the hiring committee before starting the project.

## Compensation

For this position we are targeting a base compensation in the range of $550,000 to $700,000 per year, a target annual bonus in the range of 60% to 80%, and a long-term incentive equity program ("LTIP") that will be tied to company performance. We understand you might be interested in going heavier on the equity compensation side, compared to cash compensation. Throughout the process, we commit to sharing with you backgrounds of candidates with varying experience and compensation levels to ensure you have visibility to current market compensation.

In most cases, we will deal with walk away costs either due to prorated bonuses and/or unvested long-term equity**.** There will potentially be relocation to Los Angeles, CA and thus a relocation package is required, but we will also target locally for talent. As always, the market will ultimately determine the compensation and benefits package required to attract suitable candidates who are both aligned and interested in the role and willing to relocate to one of the target locations.

Russell Reynolds Associates, Inc.                                    RussellReynolds.com

Amsterdam  Atlanta  Barcelona  Beijing  Boston  Brussels  Buenos Aires  Calgary  Chicago  Copenhagen  Dallas  Dubai  Frankfurt  Hamburg  Helsinki  Hong Kong  Houston  Istanbul  London  Los Angeles  Madrid  Melbourne  Mexico City  Miami  Milan  Minneapolis  Montréal  Mumbai  Munich  New Delhi  New York  Oslo  Palo Alto  Paris  San Francisco  São Paulo  Shanghai  Shenzhen  Singapore  Stamford  Stockholm  Sydney  Tokyo  Toronto  Warsaw  Washington, DC  Zurich

## The Team

As we discussed, Chris Faralli and Matthew Guss will lead the assignment, supported by other CFO team members based on timing of kickoff of the search. Biographies for each of the team members are attached in Appendix II.

## Terms and Conditions

Our Terms and Conditions, including details regarding our fee arrangements, for this assignment are attached. For this assignment, the Fee will be one-third of the hired candidate's Total Compensation (as defined in the Terms and Conditions). The Retainer, which will be credited against the Fee as described in the Terms and Conditions, will be $140,000 and the Administrative Charge, which covers search-related expenses that are difficult to allocate to individual searches (as more fully described in the Terms and Conditions), will be $9,000.

## Optional Additional Services – Leading Data, Analytics and Transition Support

We offer a variety of leadership advisory services which can enhance the search and transition processes and help you strengthen your leadership team and its performance for the future. To mitigate the risk of candidate selection and improve the success of the candidate recruitment process, we have a proprietary psychometric and leadership competency database and in-house organizational psychology experts with extensive executive-level assessment experience who can provide you with an extra layer of data and analytics insight about short-listed candidates' leadership styles. These services come in two forms. The first includes our proprietary Leadership Span$^{TM}$ diagnostic which helps predict CEO/C-Suite potential and performance in varying contexts, and is usually combined with a customized evaluation session led by one of our certified assessment specialists. The second includes an assessment of candidates' fit to your distinctive organizational culture through the use of our proprietary culture diagnostic. These services help to differentiate equally experienced candidates - in terms of how they are likely to achieve results and their fit within your organization. Insights from these services can provide important input to the successful candidate's transition and development planning, as well as constructive developmental feedback for additional internal candidates.

At the conclusion of the search, we can also provide tailored support to help accelerate the successful candidate's transition into your organization and increase speed to productivity using our proprietary Transition Accelerator.

Appendix III contains details about these additional services, along with an overview of our other leadership advisory service offerings. If you are interested in proceeding with any of these services, we would be pleased to provide you with the applicable fees.

## Next Steps

We trust that this proposal meets your needs and, once you are ready to proceed with the assignment, please sign and return the attached Acceptance form. We look forward to working closely with you to ensure a successful outcome.



DocuSign Envelope ID: D987FCF9-5E89-451A-B7E7-3EB83F9C9CDA

Mr. Timothy Vo
April 15, 2022
Page 3

Yours sincerely,

**Stephen Schoenberger**
Russell Reynolds Associates

**Matthew Guss**
Russell Reynolds Associates

**Chris Faralli**
Russell Reynolds Associates



## Acceptance

We agree to engage Russell Reynolds Associates to conduct a search for Chief Financial Officer in accordance with the Terms and Conditions attached to the Engagement Letter dated April 15, 2022, subject to the amendments set forth below:

The second sentence of Section 2.B. is hereby deleted in its entirety and replaced with the following: "The Retainer is payable in three equal installments, invoiced at the initiation of the Search and at 45 and 90 days thereafter."

Section 3.A. is hereby deleted in its entirety and replaced with the following:
"A. Term. The term of the Search shall begin upon execution of this Acceptance form by Client and shall continue for six months, unless earlier completed or cancelled pursuant to Section 3B."

Section 4. is hereby deleted in its entirety and replaced with the following:
"SECTION 4. Guarantee.
If a candidate with respect to whom Client has paid RRA a fee hereunder is terminated for cause or resigns, other than due to death, disability, change in the position responsibilities, compensation or any other change that is internal to Client, within six months from the date of hire, then, as Client's exclusive remedy with respect to the candidate's termination, resignation or performance, RRA will conduct a search for up to six months to find a replacement for such candidate charging only for reasonable out-of-pocket expenses."

Section 7. is hereby deleted in its entirety and replaced with the following:
"SECTION 7. Liability.  In no event shall RRA or Client be liable for consequential, indirect or punitive damages arising out of the services provided hereunder.  In addition, neither party's liability, if any, relating to or arising out of the services provided hereunder exceed the Fee paid to RRA for such services; except that either party's liability with respect to Confidentiality obligations set forth in Section 6 shall not exceed an amount equal to three times (3X) the Fee paid to RRA for such services."

### Agreed and accepted by:

Client Name: ~~Faraday Future Inc.~~ Faraday Future Inc.

Client Signature: *Carsten Breitfeld*
B7713EC7DA0B410...

Name & Title: Carsten Breitfeld  Global CEO

Date: April 15, 2022 | 11:16 AM PDT

### RRA invoices should be sent to:

Recipient Name: Invoicing@ff.com

Company Name: ~~Faraday&Future Inc.~~

Billing Address: ~~18455 S. Figueroa Street~~

Gardena, CA 90248



Zip/Postal Code: _____

Should the Project Description be shown on invoices:    ☒ Yes    ☐ No

Should the invoice recipient's Name be shown on invoices:    ☒ Yes    ☐ No

Should the invoice recipient's Job Title be shown on invoices:    ☐ Yes    ☐ No

Preferred invoicing method:    ☐ Post    ☒ Email    ☐ Client Portal

If "Email" selected, please provide up to two email addresses to which RRA invoices should be sent.

Email Address 1: `Invoicing@ff.com` _____

Email Address 2: _____

If you selected "Client Portal" invoicing, in the space below please provide the name of the website and a contact person (with email and/or phone details) who will help RRA arrange access.

_____

Is a Purchase Order Number(s) required: ☒ Yes    ☐ No

If "Yes," please provide Purchase Order Number(s): `4300008973` _____

Client Tax Number: `47-1223806` _____

## Please return the completed Acceptance form to:

**Stephen Schoenberger**
Russell Reynolds Associates
One Federal Street, 26th Floor
Boston, MA 02110-2003
Tel: +1-617-523-1111
Direct: +1-617-722-6233
Mobile: +1-603-583-8911
Fax: +1-617-523-7305
stephen.schoenberger@russellreynolds.com



## Appendix I: The Search Process

Our work will be conducted in three main phases although, throughout the search, we will be in contact with you to review our progress and address any problems:

### Phase 1: Open the Search
- We will develop a detailed understanding of your needs and work in partnership to provide a thorough, but rapid solution. We take considerable time in this initial phase to ensure our complete understanding of your people, business and culture and build on this information to create a Position Specification, which we use to inform relevant parties about the nature of the opportunity.
- We will conduct thorough research in the appropriate sectors, always seeking creative solutions, and will build a list of target organizations for prospects, which we will prepare in consultation with you.
- By discussing the Position Specification with well-informed sources, we will identify candidates in addition to those identified by our internal research.
- We will call potential candidates to investigate their availability and interest, and evaluate their fit. We will then discuss them with you.

### Phase 2: Narrow the Focus
- We will meet potential candidates face-to-face (or where a face-to-face meeting is not practical, by telephone or video-conference) in order to measure their suitability for the position.
- By preparing detailed reports, we will provide you with a comprehensive analysis of the viable candidates' strengths and weaknesses, interest and fit.
- Short-listed candidates will be interviewed by you following consideration of our reports, either at your offices or at our offices.

### Phase 3: Close the Search
- By remaining in close contact with both you and the chosen candidate, we will help ensure that negotiations over an offer proceed as smoothly as possible.
- We will conduct detailed reference checking of the chosen candidate to provide you with third-party assessments of the chosen candidate's abilities and fit.
- We will remain in contact with the successful candidate periodically after the starting date to assist in the induction process.
- In our continual efforts to improve the work we do, we review all assignments conducted by our Consultants, regardless of their conclusion. We will seek your open and candid feedback after the assignment is resolved, either by email survey or a telephone call.





# Appendix II: Biographies

## Matthew Guss

Matthew Guss is a member of the firm's Human Resources Practice, where he leads senior HR executive assignments across geographies and sectors, including the consumer, technology, healthcare, industrial and financial services industries. He has particular expertise in companies undergoing high-growth, broad transformation or an increased focus on talent. Matthew leverages his extensive experience and data-driven insights to act as a thought partner to his clients, which range from global Fortune 500 companies to venture capital and private equity backed organizations. His work has been primarily in recruiting Chief People (HR) Officers, as well as partnering with them to evolve their executive teams, hire direct reports, assess executive leadership teams or improve their succession planning. Matthew splits his time between San Francisco and San Diego.

Prior to joining Russell Reynolds Associates, Matthew spent 10 years with the Corporate Executive Board (CEB), a best practices insight and technology company which equips senior leaders with the intelligence they need to respond quickly to evolving business conditions. Earlier, Matthew was the President of Marketing Integration Corporation, a boutique direct marketing consultancy. Prior to that, he was a Partner and the National Director of Business Development for I-MARK Corporation, leading its commercial operations through a high-growth phase prior to the company's acquisition.

Matthew holds dual BA degrees in political science and international studies from Yale University.

## Chris Faralli

Chris Faralli specializes in recruiting and assessing top talent for chief financial officer and senior investor relations roles. He currently serves as the San Francisco Deputy Area Manager for Russel Reynolds Associates. He brings a rigorous, process-oriented approach to engagements with both public and private companies, with a particular focus on leading strategic next-generation searches. Chris has more than 10 years of experience advising clients across a range of industries, including technology, financial services, healthcare and nonprofit organizations. Chris began his career in New York, focused on CFO searches, broad finance mandates and investor relations.

Chris received his BA in political science from the University of Pennsylvania. He is a member of the National Investor Relations Institute (NIRI), for which he has spoken at a number of industry events.

## Stephen Schoenberger

Stephen Schoenberger is a member of the firm's Industrial and Natural Resources sector with a primary focus on the automotive, chemical, and materials practices. He is based in the Boston office.

Stephen joined Russell Reynolds Associates in the Shanghai office. Stephen has extensive experience working with global automotive and chemical clients across the US, Europe, and the Asia Pacific. Stephen has complete CEO level searches for Fortune 500 companies, Chinese SOEs, and venture-backed start-ups in the automotive and chemical spaces. Before relocating back to Boston, Stephen worked with General Motors and Ford Motor Company in product strategy and corporate development roles.

Stephen received his MBA in finance and strategy from the University of Michigan in the Stephen M. Ross School of Business and earned his bachelor's degree from the College of the Holy Cross. Stephen is fluent in English and Mandarin Chinese.

## Appendix III: Other Services

For a supplemental fee, we offer you the ability to seamlessly add a comprehensive executive assessment and success-focused transition and onboarding support. These data-driven best practice services provide an additional degree of rigor for selecting your candidate and helping to ensure their successful integration into your organization.





We also offer other advisory services designed to support your efforts in strengthening your leadership team and its performance for the future.





# Terms and Conditions

## SECTION 1. Professional Services.

**A. Services.** Russell Reynolds Associates ("RRA") agrees to conduct a search (the "Search") for Client for the position (the "Position") described in the attached engagement letter (the "Engagement Letter"). "Client" refers to the entity to which the Engagement Letter is addressed.

**B. Exclusivity.** RRA shall have the exclusive right during the term of the Search to represent Client with regard to the Search.

**C. Reference and Background Checks.** RRA will conduct reference checks and use commercially reasonable efforts to verify educational history for the finalist candidates. Any additional background investigation regarding candidates shall be Client's responsibility. Client understands that in conducting the Search and the reference and educational checks, RRA relies on information given to it by sources, candidates, references and private contacts, and, therefore, RRA does not warrant the veracity of such information.

**D. Warranties.** RRA shall perform the Search in good faith consistent with executive search industry standards. All other warranties are expressly disclaimed.

## SECTION 2. Fees.

**A. Fee.** Client shall pay RRA a fee (the "Fee") equal to one-third of the total estimated first year compensation of the candidate hired for the Position, including base salary, projected bonus, signing bonus and any other compensation attributable to the candidate's first year of employment ("Total Compensation").

**B. Retainer.** Client shall pay RRA an agreed estimate of the Fee in the amount set forth in the Engagement Letter (the "Retainer"). The Retainer is payable in three equal installments, invoiced at the initiation of the Search and at 30 and 60 days thereafter. If, based on the Total Compensation of the hired candidate, the amount of the Fee exceeds the Retainer amounts previously paid, the excess shall be due to RRA upon the candidate's acceptance of an offer of employment from Client. Subject to Section 3B, the Retainer is RRA's minimum fee for undertaking the Search.

**C. Expenses.** Client shall reimburse RRA for all reasonable out-of-pocket search-related expenses, without mark-up (e.g., travel expenses and external video-conferencing costs for RRA consultants and prospective candidates) on a monthly basis. Client also shall pay RRA an Administrative Charge in the amount set forth in the Engagement Letter (the "Administrative Charge") for the cost of search-related expenses that are difficult to allocate to individual searches (e.g., degree verifications, internal video-conferencing, on-line research, in-house databases, search-related information technology and similar costs). The Administrative Charge is payable in three equal installments along with the Retainer installments.

**D. Additional Hires.** If, during the Search or within 12 months after completion or cancellation of the Search, Client hires a candidate presented during the Search for a position other than the Position, Client shall pay RRA one-third of the Total Compensation of each such candidate upon the candidate's acceptance of an offer of employment with Client.

**E. Invoices.** Invoices are payable within 30 days of receipt. RRA may suspend its performance hereunder until payment is received on past due invoices. Any sales, VAT or similar taxes applicable to the services provided hereunder shall be added to RRA's invoices and paid by Client.

## SECTION 3. Term; Cancellation.

**A. Term.** The term of the Search shall begin upon initiation of the Search and shall continue for six months, unless earlier completed or cancelled pursuant to Section 3B.

**B. Cancellation.** Client may cancel the Search at any time. If Client cancels the Search, Client shall pay RRA all Retainer and Administrative Charge amounts which were eligible for invoicing hereunder prior to such cancellation, and shall reimburse RRA for all reasonable out-of-pocket expenses incurred through the cancellation date. If Client hires, within 12 months after cancellation, a candidate presented during the Search for the Position, Client shall pay RRA the Fee set forth in Section 2A, less any Retainer payments previously paid for the Search, upon the candidate's acceptance of an offer of employment with Client.

## SECTION 4. Guarantee.

If a candidate with respect to whom Client has paid RRA a fee hereunder is terminated for cause or resigns, other than due to death, disability, change in the position responsibilities, compensation or any other change that is internal to Client, within six months from the date of hire, then, as Client's exclusive remedy with respect to the candidate's termination, resignation or performance, RRA will conduct a search for up to three months to find a replacement for such candidate charging only for reasonable out-of-pocket expenses.

## SECTION 5. Equal Opportunity.

Each party agrees that in connection with the Search it will comply with all applicable equal opportunity and anti-discrimination laws.

## SECTION 6. Confidentiality and Data Privacy.

**A. Confidential Information.** "Confidential Information" shall mean all non-public information provided by one party to the other which is either identified as confidential at the time of disclosure or disclosed under circumstances that would cause a reasonable person to conclude that the information is confidential. All candidate information and personal data shall be RRA Confidential Information. Each party (i) shall protect the other party's Confidential Information from unauthorized disclosure, using at least the same degree of care that it uses to protect its own Confidential Information, but not less than reasonable care, (ii) shall not, except as required by law, disclose the other party's Confidential Information without the prior written consent of such other party and the candidate, if applicable; provided, however, that RRA may disclose Client Confidential Information as necessary to conduct the Search, (iii) shall use the other party's Confidential Information solely in connection with the services provided hereunder and (iv) shall comply with applicable data privacy laws and use appropriate technological and organizational measures to protect candidate personal data from unauthorized access and use.

**B. Obligations Upon Termination.** Each party's obligations under this Section 6 will survive the termination or expiration of the Search for a period of three years, provided, however, that each party's obligations under data privacy laws shall continue in accordance with such laws.

**C. Data Privacy.** Client and RRA agree to comply with the terms of the Data Processing Addendum attached hereto as Annex I. To the extent there is any conflict or inconsistency between these Terms and Conditions and Annex I, Annex I shall prevail.

## SECTION 7. Liability.

In no event shall RRA or Client be liable for consequential, indirect or punitive damages arising out of the services provided hereunder or shall either party's liability, if any, relating to or arising out of the services provided hereunder exceed the Fee paid to RRA for such services.

## SECTION 8. Entire Agreement; Amendment.

These Terms and Conditions (including Annex I hereto) and the Engagement Letter contain the complete agreement of the parties as to the subject matter hereof, supersede all prior and contemporaneous understandings and agreements relating thereto and may not be amended, modified or supplemented except by a written instrument signed by both parties.

*May 2018*



## Annex I to Terms and Conditions

### Data Processing Addendum

This Data Processing Addendum ("**Addendum**") forms part of the Engagement Letter between RRA and Client and sets out the terms that apply to each party when processing Personal Data (as defined below) in connection with the services provided by RRA to Client pursuant to the Engagement Letter (the "**Services**"). Capitalized terms used in this Addendum shall have the meanings given to them in the Terms and Conditions attached to the Engagement Letter unless otherwise defined in this Addendum. This Addendum shall survive termination or expiry of the Engagement Letter.

**A. Definitions**:

(a) the lower case terms "**controller**," "**processor**," "**data subject**," and "**processing**" (and "**process**") shall have the meanings given to them in Applicable Data Protection Law;

(b) "**Applicable Data Protection Law**" means any and all privacy and data protection laws and regulations applicable to the Personal Data in question, including, where applicable, European Data Protection Law (in each case, as may be amended, superseded or replaced from time to time); (c) "**European Data Protection Law**" means : (i) the EU General Data Protection Regulation 2016/679) ("**GDPR**"); (ii) UK Data Protection Laws (iii) the EU e-Privacy Directive (Directive 2002/58/EC); (iv) the Swiss Federal Data Protection Act ("**Swiss DPA**") and (v) any national data protection laws made under or pursuant to (i)-(iv);

(d) "**Personal Data**" means any information relating to an identified or identifiable natural person to the extent that such information is protected as personal data or personal information under Applicable Data Protection Law;

(e) "**Restricted Transfer**" means: (i) where the GDPR applies, a transfer of Personal Data from the European Economic Area to a country outside of the European Economic Area which is not subject to an adequacy determination by the European Commission; (ii) where the UK Data Protection Laws apply, a transfer of Personal Data from the United Kingdom to any other country which is not adequate pursuant to regulations under Section 17A of the United Kingdom Data Protection Act; and (iii) where the Swiss DPA applies, a transfer of Personal Data from Switzerland to any other country which is not included on the list of adequate jurisdictions published by the Swiss Federal Data Protection and Information Commissioner;

(f) "**UK Data Protection Laws**" means all laws relating to data protection, the processing of personal data, privacy and/or electronic communications in force from time to time in the UK, including: (i) the GDPR as saved into United Kingdom law by virtue of section 3 of the United Kingdom's European Union (Withdrawal) Act 2018 (the "**UK GDPR**"); and (ii) UK Data Protection Act 2018;

(g) "**Standard Contractual Clauses**" or "**SCCs**" means the standard contractual clauses annexed to the European Commission's Implementing Decision 2021/914 of 4 June 2021.

**B. Purposes of processing.** The parties acknowledge that in connection with the Services, each party may provide or make available to the other party Personal Data. Each receiving party shall process such Personal Data in compliance with Applicable Data Protection law and only for the purposes described in the Engagement Letter or as otherwise required for the purpose of providing or receiving the Services, or for another purpose only where permitted under and in compliance with Applicable Data Protection Law.

**C. Relationship of the parties**. Each party will process the copy of the Personal Data in its possession or control as a controller in connection with the Services.

**D. Compliance with law**. Each party shall be separately responsible for complying with its obligations under Applicable Data Protection Law and this Addendum when processing Personal Data. Neither party shall be responsible for the other party's compliance with Applicable Data Protection Law. In particular, each party shall be individually responsible for ensuring that its processing of the Personal Data is lawful, fair and transparent, and shall make available to data subjects a privacy statement that fulfils the requirements of Applicable Data Protection Law. Each party accepts liability for all processing of Personal Data conducted by its processor(s).

**E. International transfers**. Neither party shall make a Restricted Transfer unless such transfer: (i) is covered by a suitable framework or other legally adequate transfer mechanism recognized by the relevant authorities or courts as providing an adequate level of protection for Personal Data; (ii) is to a recipient that has achieved binding corporate rules authorization and is making the transfer to a member of its corporate group pursuant to such authorization; or (iii) is pursuant to standard contractual clauses executed by the parties; in each case as adopted or approved in accordance with applicable European Data Protection Law. Notwithstanding the generality of the foregoing:

(a) If and to the extent RRA makes a Restricted Transfer of Personal Data to Client, RRA's "outbound" SCCs set out at www.russellreynolds.com/ctocsccs-outbound shall apply (including the interpretative provisions of the "UK addendum" and the "Swiss addendum" set out therein, solely applicable to any incidence of a Restricted Transfer to which UK Data Protection Laws or the Swiss DPA apply);

(b) If and to the extent Client makes a Restricted Transfer of Personal Data to RRA, RRA's "inbound" SCCs set out at www.russellreynolds.com/ctocsccs-inbound shall apply (including the interpretative provisions of the "UK addendum" and the "Swiss addendum" set out therein, solely applicable to any incidence of a Restricted Transfer to which UK Data Protection Laws or the Swiss DPA apply); and

(c) The parties agree that the Standard Contractual Clauses referred to in paragraphs (a) and (b) above are incorporated by reference into and form an integral part of this Addendum. If any provision of this Addendum contradicts, directly or indirectly, the Standard Contractual Clauses, the Standard Contractual Clauses shall prevail.

**F. Security:** Each party shall implement and maintain appropriate technical and organizational measures to protect the Personal Data in their possession or control from accidental or unlawful destruction loss, alteration, or unauthorised disclosure or access (a "**Security Incident**") and to preserve the security and confidentiality of such Personal Data.

**G. Cooperation and data subjects' rights.** In the event that either party receives: (i) any request from a data subject to exercise any of its rights under Applicable Data Protection Law (including its rights of access, correction, objection, erasure, restriction or data portability, as applicable); or (ii) any other correspondence, enquiry or complaint from a data subject, regulator or other third party in connection with the processing of the Personal Data (collectively, "Correspondence"), then where such Correspondence relates to processing conducted by the other party, it shall promptly inform the other party and the parties shall cooperate in good faith as necessary to respond to such Correspondence and fulfil their respective obligations under Applicable Data Protection Law. Each party shall provide reasonable assistance to the other as may be required in order to enable each party to perform its responsibilities pursuant to this Addendum and the Applicable Data Protection Law.          *Sept 2021*



# EXHIBIT B



101 California Street
Suite 2900
San Francisco, CA 94111-5829 USA
Telephone   +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc
18455 S. Figueroa Street
Garedena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **271414** |
| **Invoice Date:** | **04/26/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-163NA** |
| **Assignment Title:** | **Chief Financial Officer** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---:|
| Professional Services (First Interim Fee) | USD | 46,666.00 |
| Administrative Charge | | 3,000.00 |
| **Total Amount Due** | **USD** | **49,666.00** |

Billing Inquiries: Faralli,Christopher M.

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

---

| Please remit payment, via Wire Transfer to: | Alternatively checks can be sent to: |
|---|---|
| | |

| | | |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

# EXHIBIT C



101 California Street
Suite 2900
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc
18455 S. Figueroa Street
Garedena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **271415** |
| **Invoice Date:** | **06/03/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-163NA** |
| **Assignment Title:** | **Chief Financial Officer** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---:|
| Professional Services (Second Interim Fee) | USD | 46,666.00 |
| Administrative Charge | | 3,000.00 |
| **Total Amount Due** | **USD** | **49,666.00** |

Billing Inquiries: Faralli,Christopher M.

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

Please remit payment, via Wire Transfer to:

| | | |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

Alternatively checks can be sent to:

# EXHIBIT D



101 California Street
Suite 1200
San Francisco, CA 94111-5829 USA
Telephone   +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc
18455 S. Figueroa Street
Garedena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **271416** |
| **Invoice Date:** | **07/18/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-163NA** |
| **Assignment Title:** | **Chief Financial Officer** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---:|
| Professional Services (Third Interim Fee) | USD | 46,668.00 |
| Administrative Charge | | 3,000.00 |
| Candidate Expenses | | 2,724.25 |
| **Total Amount Due** | **USD** | **52,392.25** |

Billing Inquiries: Faralli,Christopher M.

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

---

| Please remit payment, via Wire Transfer to: | | Alternatively checks can be sent to: |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

# EXHIBIT E



101 California Street
Suite 2200
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc
18455 S. Figueroa Street
Garedena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **274750** |
| **Invoice Date:** | **10/17/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-163NA** |
| **Assignment Title:** | **Chief Financial Officer** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---:|
| Candidate Expenses | USD | 1,252.43 |
| **Total Amount Due** | **USD** | **1,252.43** |

Billing Inquiries: Faralli,Christopher M.

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

| Please remit payment, via Wire Transfer to: | | Alternatively checks can be sent to: |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

# EXHIBIT F



One Federal Street
26th Floor
Boston, MA 02110-1007 USA
Telephone +1-617-523-1111

**PRIVATE AND CONFIDENTIAL**                                          Stephen Schoenberger

Mr. Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S Figueroa Street
Gardena, CA 90248

April 15, 2022

Dear Mr. Vo:

Further to our discussions, this Engagement Letter details our understanding of your needs and the terms of our services.

## Our Understanding of the Situation

Faraday Future is looking to build its executive leadership team as it prepares to launch its flagship vehicle the FF 91 later this year. Faraday Future is looking to first recruit a new Chief Financial Officer and a Chief Human Resources Officer.

## Ideal Candidate Profile

Faraday Future is looking to recruit an experienced Chief Human Resources Officer with a background ideally from the technology industry or an electric vehicle manufacturer like Tesla. We would want to conduct a full calibration kick off meeting with the hiring committee before starting the project.

## Compensation

For this position we are targeting a base compensation in the range of $400,000 to $500,000 per year, a target annual bonus in the range of 50% to 75%, and a long-term incentive equity program ("LTIP") that will be tied to company performance. We understand you might be interested in going heavier on the equity compensation side, compared to cash compensation. Throughout the process, we commit to sharing with you backgrounds of candidates with varying experience and compensation levels to ensure you have visibility to current market compensation.

In most cases, we will deal with walk away costs either due to prorated bonuses and/or unvested long-term equity. There will potentially be relocation to Los Angeles, CA and thus a relocation package is required, but we will also target locally for talent. As always, the market will ultimately determine the compensation and benefits package required to attract suitable candidates who are both aligned and interested in the role and willing to relocate to one of the target locations.

Russell Reynolds Associates, Inc.                                          RussellReynolds.com

Amsterdam  Atlanta  Barcelona  Beijing  Boston  Brussels  Buenos Aires  Calgary  Chicago  Copenhagen  Dallas  Dubai  Frankfurt  Hamburg  Helsinki  Hong Kong
Houston  Istanbul  London  Los Angeles  Madrid  Melbourne  Mexico City  Miami  Milan  Minneapolis  Montréal  Mumbai  Munich  New Delhi  New York  Oslo
Palo Alto  Paris  San Francisco  São Paulo  Shanghai  Shenzhen  Singapore  Stamford  Stockholm  Sydney  Tokyo  Toronto  Warsaw  Washington, DC  Zurich

## The Team

As we discussed, Matthew Guss will lead the assignment, supported by Stephen Schoenberger and other CHRO team members based on timing of the search. Biographies for each of the team members are attached in Appendix II.

## Terms and Conditions

Our Terms and Conditions, including details regarding our fee arrangements, for this assignment are attached. For this assignment, the Fee will be one-third of the hired candidate's Total Compensation (as defined in the Terms and Conditions). The Retainer, which will be credited against the Fee as described in the Terms and Conditions, will be $140,000 and the Administrative Charge, which covers search-related expenses that are difficult to allocate to individual searches (as more fully described in the Terms and Conditions), will be $9,000.

## Optional Additional Services – Leading Data, Analytics and Transition Support

We offer a variety of leadership advisory services which can enhance the search and transition processes and help you strengthen your leadership team and its performance for the future. To mitigate the risk of candidate selection and improve the success of the candidate recruitment process, we have a proprietary psychometric and leadership competency database and in-house organizational psychology experts with extensive executive-level assessment experience who can provide you with an extra layer of data and analytics insight about short-listed candidates' leadership styles. These services come in two forms. The first includes our proprietary Leadership Span$^{TM}$ diagnostic which helps predict CEO/C-Suite potential and performance in varying contexts, and is usually combined with a customized evaluation session led by one of our certified assessment specialists. The second includes an assessment of candidates' fit to your distinctive organizational culture through the use of our proprietary culture diagnostic. These services help to differentiate equally experienced candidates - in terms of how they are likely to achieve results and their fit within your organization. Insights from these services can provide important input to the successful candidate's transition and development planning, as well as constructive developmental feedback for additional internal candidates.

At the conclusion of the search, we can also provide tailored support to help accelerate the successful candidate's transition into your organization and increase speed to productivity using our proprietary Transition Accelerator.

Appendix III contains details about these additional services, along with an overview of our other leadership advisory service offerings. If you are interested in proceeding with any of these services, we would be pleased to provide you with the applicable fees.

## Next Steps

We trust that this proposal meets your needs and, once you are ready to proceed with the assignment, please sign and return the attached Acceptance form. We look forward to working closely with you to ensure a successful outcome.



DocuSign Envelope ID: C5F73C84-1DAD-46F3-9CB4-0A6989D754A8

Mr. Timothy Vo
April 15, 2022
Page 3

Yours sincerely,

**Stephen Schoenberger**            **Matthew Guss**
Russell Reynolds Associates       Russell Reynolds Associates



## Acceptance

We agree to engage Russell Reynolds Associates to conduct a search for CHRO in accordance with the Terms and Conditions attached to the Engagement Letter dated April 15, 2022, subject to the amendments set forth below:

The second sentence of Section 2.B. is hereby deleted in its entirety and replaced with the following: "The Retainer is payable in three equal installments, invoiced at the initiation of the Search and at 45 and 90 days thereafter."

Section 3.A. is hereby deleted in its entirety and replaced with the following: "A. Term. The term of the Search shall begin upon execution of this Acceptance form by Client and shall continue for six months, unless earlier completed or cancelled pursuant to Section 3B."

Section 4. is hereby deleted in its entirety and replaced with the following: "SECTION 4. Guarantee.
If a candidate with respect to whom Client has paid RRA a fee hereunder is terminated for cause or resigns, other than due to death, disability, change in the position responsibilities, compensation or any other change that is internal to Client, within six months from the date of hire, then, as Client's exclusive remedy with respect to the candidate's termination, resignation or performance, RRA will conduct a search for up to six months to find a replacement for such candidate charging only for reasonable out-of-pocket expenses."

Section 7. is hereby deleted in its entirety and replaced with the following: "SECTION 7. Liability. In no event shall RRA or Client be liable for consequential, indirect or punitive damages arising out of the services provided hereunder. In addition, neither party's liability, if any, relating to or arising out of the services provided hereunder exceed the Fee paid to RRA for such services; except that either party's liability with respect to Confidentiality obligations set forth in Section 6 shall not exceed an amount equal to three times (3X) the Fee paid to RRA for such services."

### Agreed and accepted by:

Client Name: Faraday Future Inc.

Client Signature: *Carsten Breitfeld*

Name & Title: Carsten Breitfeld    Global CEO

Date: April 19, 2022 | 2:24 PM PDT

### RRA invoices should be sent to:

Recipient Name: Invoicing@ff.com

Company Name: Faraday&Future Inc.

Billing Address: 18455 S. Figueroa Street
Gardena, CA

Zip/Postal Code: 90248



Should the Project Description be shown on invoices:    ☒ Yes    ☐ No

Should the invoice recipient's Name be shown on invoices:    ☒ Yes    ☐ No

Should the invoice recipient's Job Title be shown on invoices:    ☒ Yes    ☐ No

Preferred invoicing method:    ☐ Post    ☒ Email    ☐ Client Portal

      If "Email" selected, please provide up to two email addresses to which RRA invoices should be sent.

      Email Address 1:    invoicing@ff.com

      Email Address 2:

      If you selected "Client Portal" invoicing, in the space below please provide the name of the website and a contact person (with email and/or phone details) who will help RRA arrange access.

Is a Purchase Order Number(s) required:    ☒ Yes    ☐ No

      If "Yes," please provide Purchase Order Number(s):    4300008973

Client Tax Number:    47-1223806

## Please return the completed Acceptance form to:

**Stephen Schoenberger**
Russell Reynolds Associates
One Federal Street, 26th Floor
Boston, MA 02110-2003
Tel: +1-617-523-1111
Direct: +1-617-722-6233
Mobile: +1-603-583-8911
Fax: +1-617-523-7305
stephen.schoenberger@russellreynolds.com



DocuSign Envelope ID: C5F73C84-4DAD-46F2-9CB4-0A6989D754A8

# Appendix I: The Search Process

Our work will be conducted in three main phases although, throughout the search, we will be in contact with you to review our progress and address any problems:

## Phase 1: Open the Search

- We will develop a detailed understanding of your needs and work in partnership to provide a thorough, but rapid solution. We take considerable time in this initial phase to ensure our complete understanding of your people, business and culture and build on this information to create a Position Specification, which we use to inform relevant parties about the nature of the opportunity.
- We will conduct thorough research in the appropriate sectors, always seeking creative solutions, and will build a list of target organizations for prospects, which we will prepare in consultation with you.
- By discussing the Position Specification with well-informed sources, we will identify candidates in addition to those identified by our internal research.
- We will call potential candidates to investigate their availability and interest, and evaluate their fit. We will then discuss them with you.

## Phase 2: Narrow the Focus

- We will meet potential candidates face-to-face (or where a face-to-face meeting is not practical, by telephone or video-conference) in order to measure their suitability for the position.
- By preparing detailed reports, we will provide you with a comprehensive analysis of the viable candidates' strengths and weaknesses, interest and fit.
- Short-listed candidates will be interviewed by you following consideration of our reports, either at your offices or at our offices.

## Phase 3: Close the Search

- By remaining in close contact with both you and the chosen candidate, we will help ensure that negotiations over an offer proceed as smoothly as possible.
- We will conduct detailed reference checking of the chosen candidate to provide you with third-party assessments of the chosen candidate's abilities and fit.
- We will remain in contact with the successful candidate periodically after the starting date to assist in the induction process.
- In our continual efforts to improve the work we do, we review all assignments conducted by our Consultants, regardless of their conclusion. We will seek your open and candid feedback after the assignment is resolved, either by email survey or a telephone call.



## Appendix II:  Biographies

**Matthew Guss**

Matthew Guss is a member of the firm's Human Resources Practice, where he leads senior HR executive assignments across geographies and sectors, including the consumer, technology, healthcare, industrial and financial services industries. He has particular expertise in companies undergoing high-growth, broad transformation or an increased focus on talent. Matthew leverages his extensive experience and data-driven insights to act as a thought partner to his clients, which range from global Fortune 500 companies to venture capital and private equity backed organizations. His work has been primarily in recruiting Chief People (HR) Officers, as well as partnering with them to evolve their executive teams, hire direct reports, assess executive leadership teams or improve their succession planning. Matthew splits his time between San Francisco and San Diego.

Prior to joining Russell Reynolds Associates, Matthew spent 10 years with the Corporate Executive Board (CEB), a best practices insight and technology company which equips senior leaders with the intelligence they need to respond quickly to evolving business conditions. Earlier, Matthew was the President of Marketing Integration Corporation, a boutique direct marketing consultancy. Prior to that, he was a Partner and the National Director of Business Development for I-MARK Corporation, leading its commercial operations through a high-growth phase prior to the company's acquisition.

Matthew holds dual BA degrees in political science and international studies from Yale University.

**Stephen Schoenberger**

Stephen Schoenberger is a member of the firm's Industrial and Natural Resources sector with a primary focus on the automotive, chemical, and materials practices. He is based in the Boston office.

Stephen joined Russell Reynolds Associates in the Shanghai office. Stephen has extensive experience working with global automotive and chemical clients across the US, Europe, and the Asia Pacific. Stephen has complete CEO level searches for Fortune 500 companies, Chinese SOEs, and venture-backed start-ups in the automotive and chemical spaces. Before relocating back to Boston, Stephen worked with General Motors and Ford Motor Company in product strategy and corporate development roles.

Stephen received his MBA in finance and strategy from the University of Michigan in the Stephen M. Ross School of Business and earned his bachelor's degree from the College of the Holy Cross. Stephen is fluent in English and Mandarin Chinese.



# Appendix III: Other Services

For a supplemental fee, we offer you the ability to seamlessly add a comprehensive executive assessment and success-focused transition and onboarding support. These data-driven best practice services provide an additional degree of rigor for selecting your candidate and helping to ensure their successful integration into your organization.







We also offer other advisory services designed to support your efforts in strengthening your leadership team and its performance for the future.





# Terms and Conditions

## SECTION 1. Professional Services.

**A. Services.** Russell Reynolds Associates ("RRA") agrees to conduct a search (the "Search") for Client for the position (the "Position") described in the attached engagement letter (the "Engagement Letter"). "Client" refers to the entity to which the Engagement Letter is addressed.

**B. Exclusivity.** RRA shall have the exclusive right during the term of the Search to represent Client with regard to the Search.

**C. Reference and Background Checks.** RRA will conduct reference checks and use commercially reasonable efforts to verify educational history for the finalist candidates. Any additional background investigation regarding candidates shall be Client's responsibility. Client understands that in conducting the Search and the reference and educational checks, RRA relies on information given to it by sources, candidates, references and private contacts, and, therefore, RRA does not warrant the veracity of such information.

**D. Warranties.** RRA shall perform the Search in good faith consistent with executive search industry standards. All other warranties are expressly disclaimed.

## SECTION 2. Fees.

**A. Fee.** Client shall pay RRA a fee (the "Fee") equal to one-third of the total estimated first year compensation of the candidate hired for the Position, including base salary, projected bonus, signing bonus and any other compensation attributable to the candidate's first year of employment ("Total Compensation").

**B. Retainer.** Client shall pay RRA an agreed estimate of the Fee in the amount set forth in the Engagement Letter (the "Retainer"). The Retainer is payable in three equal installments, invoiced at the initiation of the Search and at 30 and 60 days thereafter. If, based on the Total Compensation of the hired candidate, the amount of the Fee exceeds the Retainer amounts previously paid, the excess shall be due to RRA upon the candidate's acceptance of an offer of employment from Client. Subject to Section 3B, the Retainer is RRA's minimum fee for undertaking the Search.

**C. Expenses.** Client shall reimburse RRA for all reasonable out-of-pocket search-related expenses, without mark-up (e.g., travel expenses and external video-conferencing costs for RRA consultants and prospective candidates) on a monthly basis. Client also shall pay RRA an Administrative Charge in the amount set forth in the Engagement Letter (the "Administrative Charge") for the cost of search-related expenses that are difficult to allocate to individual searches (e.g., degree verifications, internal video-conferencing, on-line research, in-house databases, search-related information technology and similar costs). The Administrative Charge is payable in three equal installments along with the Retainer installments.

**D. Additional Hires.** If, during the Search or within 12 months after completion or cancellation of the Search, Client hires a candidate presented during the Search for a position other than the Position, Client shall pay RRA one-third of the Total Compensation of each such candidate upon the candidate's acceptance of an offer of employment with Client.

**E. Invoices.** Invoices are payable within 30 days of receipt. RRA may suspend its performance hereunder until payment is received on past due invoices. Any sales, VAT or similar taxes applicable to the services provided hereunder shall be added to RRA's invoices and paid by Client.

## SECTION 3. Term; Cancellation.

**A. Term.** The term of the Search shall begin upon initiation of the Search and shall continue for six months, unless earlier completed or cancelled pursuant to Section 3B.

**B. Cancellation.** Client may cancel the Search at any time. If Client cancels the Search, Client shall pay RRA all Retainer and Administrative Charge

amounts which were eligible for invoicing hereunder prior to such cancellation, and shall reimburse RRA for all reasonable out-of-pocket expenses incurred through the cancellation date. If Client hires, within 12 months after cancellation, a candidate presented during the Search for the Position, Client shall pay RRA the Fee set forth in Section 2A, less any Retainer payments previously paid for the Search, upon the candidate's acceptance of an offer of employment with Client.

## SECTION 4. Guarantee.

If a candidate with respect to whom Client has paid RRA a fee hereunder is terminated for cause or resigns, other than due to death, disability, change in the position responsibilities, compensation or any other change that is internal to Client, within six months from the date of hire, then, as Client's exclusive remedy with respect to the candidate's termination, resignation or performance, RRA will conduct a search for up to three months to find a replacement for such candidate charging only for reasonable out-of-pocket expenses.

## SECTION 5. Equal Opportunity.

Each party agrees that in connection with the Search it will comply with all applicable equal opportunity and anti-discrimination laws.

## SECTION 6. Confidentiality and Data Privacy.

**A. Confidential Information.** "Confidential Information" shall mean all non-public information provided by one party to the other which is either identified as confidential at the time of disclosure or disclosed under circumstances that would cause a reasonable person to conclude that the information is confidential. All candidate information and personal data shall be RRA Confidential Information. Each party (i) shall protect the other party's Confidential Information from unauthorized disclosure, using at least the same degree of care that it uses to protect its own Confidential Information, but not less than reasonable care, (ii) shall not, except as required by law, disclose the other party's Confidential Information without the prior written consent of such other party and the candidate, if applicable; provided, however, that RRA may disclose Client Confidential Information as necessary to conduct the Search, (iii) shall use the other party's Confidential Information solely in connection with the services provided hereunder and (iv) shall comply with applicable data privacy laws and use appropriate technological and organizational measures to protect candidate personal data from unauthorized access and use.

**B. Obligations Upon Termination.** Each party's obligations under this Section 6 will survive the termination or expiration of the Search for a period of three years, provided, however, that each party's obligations under data privacy laws shall continue in accordance with such laws.

**C. Data Privacy.** Client and RRA agree to comply with the terms of the Data Processing Addendum attached hereto as Annex I. To the extent there is any conflict or inconsistency between these Terms and Conditions and Annex I, Annex I shall prevail.

## SECTION 7. Liability.

In no event shall RRA or Client be liable for consequential, indirect or punitive damages arising out of the services provided hereunder or shall either party's liability, if any, relating to or arising out of the services provided hereunder exceed the Fee paid to RRA for such services.

## SECTION 8. Entire Agreement; Amendment.

These Terms and Conditions (including Annex I hereto) and the Engagement Letter contain the complete agreement of the parties as to the subject matter hereof, supersede all prior and contemporaneous understandings and agreements relating thereto and may not be amended, modified or supplemented except by a written instrument signed by both parties.

*May 2018*



# Annex I to Terms and Conditions

**Data Processing Addendum**

This Data Processing Addendum ("**Addendum**") forms part of the Engagement Letter between RRA and Client and sets out the terms that apply to each party when processing Personal Data (as defined below) in connection with the services provided by RRA to Client pursuant to the Engagement Letter (the "**Services**"). Capitalized terms used in this Addendum shall have the meanings given to them in the Terms and Conditions attached to the Engagement Letter unless otherwise defined in this Addendum. This Addendum shall survive termination or expiry of the Engagement Letter.

## A. Definitions:

(a) the lower case terms "**controller**," "**processor**," "**data subject**," and "**processing**" (and "**process**") shall have the meanings given to them in Applicable Data Protection Law;

(b) "**Applicable Data Protection Law**" means any and all privacy and data protection laws and regulations applicable to the Personal Data in question, including, where applicable, European Data Protection Law (in each case, as may be amended, superseded or replaced from time to time);

(c) "**European Data Protection Law**" means : (i) the EU General Data Protection Regulation (Regulation 2016/679) ("**GDPR**"); (ii) UK Data Protection Laws (iii) the EU e-Privacy Directive (Directive 2002/58/EC); (iv) the Swiss Federal Data Protection Act ("**Swiss DPA**") and (v) any national data protection laws made under or pursuant to (i)-(iv);

(d) "**Personal Data**" means any information relating to an identified or identifiable natural person to the extent that such information is protected as personal data or personal information under Applicable Data Protection Law;

(e) "**Restricted Transfer**" means: (i) where the GDPR applies, a transfer of Personal Data from the European Economic Area to a country outside of the European Economic Area which is not subject to an adequacy determination by the European Commission; (ii) where the UK Data Protection Laws apply, a transfer of Personal Data from the United Kingdom to any other country which is not adequate pursuant to regulations under Section 17A of the United Kingdom Data Protection Act; and (iii) where the Swiss DPA applies, a transfer of Personal Data from Switzerland to any other country which is not included on the list of adequate jurisdictions published by the Swiss Federal Data Protection and Information Commissioner;

(f) "**UK Data Protection Laws**" means all laws relating to data protection, the processing of personal data, privacy and/or electronic communications in force from time to time in the UK, including: (i) the GDPR as saved into United Kingdom law by virtue of section 3 of the United Kingdom's European Union (Withdrawal) Act 2018 (the "**UK GDPR**"); and (ii) UK Data Protection Act 2018;

(g) "**Standard Contractual Clauses**" or "**SCCs**" means the standard contractual clauses annexed to the European Commission's Implementing Decision 2021/914 of 4 June 2021.

**B. Purposes of processing.** The parties acknowledge that in connection with the Services, each party may provide or make available to the other party Personal Data. Each receiving party shall process such Personal Data in compliance with Applicable Data Protection law and only for the purposes described in the Engagement Letter or as otherwise required for the purpose of providing or receiving the Services, or for another purpose only where permitted under and in compliance with Applicable Data Protection Law.

**C. Relationship of the parties.** Each party will process the copy of the Personal Data in its possession or control as a controller in connection with the Services.

**D. Compliance with law.** Each party shall be separately responsible for complying with its obligations under Applicable Data Protection Law and this Addendum when processing Personal Data. Neither party shall be responsible for the other party's compliance with Applicable Data Protection Law. In particular, each party shall be individually responsible for ensuring that its processing of the Personal Data is lawful, fair and transparent, and shall make available to data subjects a privacy statement that fulfils the requirements of Applicable Data Protection Law. Each party accepts liability for all processing of Personal Data conducted by its processor(s).

**E. International transfers.** Neither party shall make a Restricted Transfer unless such transfer: (i) is covered by a suitable framework or other legally adequate transfer mechanism recognized by the relevant authorities or courts as providing an adequate level of protection for Personal Data; (ii) is to a recipient that has achieved binding corporate rules authorization and is making the transfer to a member of its corporate group pursuant to such authorization; or (iii) is pursuant to standard contractual clauses executed by the parties; in each case as adopted or approved in accordance with applicable European Data Protection Law. Notwithstanding the generality of the foregoing:

(a) If and to the extent RRA makes a Restricted Transfer of Personal Data to Client, RRA's "outbound" SCCs set out at www.russellreynolds.com/ctocsccs-outbound shall apply (including the interpretative provisions of the "UK addendum" and the "Swiss addendum" set out therein, solely applicable to any incidence of a Restricted Transfer to which UK Data Protection Laws or the Swiss DPA apply);

(b) If and to the extent Client makes a Restricted Transfer of Personal Data to RRA, RRA's "inbound" SCCs set out at www.russellreynolds.com/ctocsccs-inbound shall apply (including the interpretative provisions of the "UK addendum" and the "Swiss addendum" set out therein, solely applicable to any incidence of a Restricted Transfer to which UK Data Protection Laws or the Swiss DPA apply); and

(c) The parties agree that the Standard Contractual Clauses referred to in paragraphs (a) and (b) above are incorporated by reference into and form an integral part of this Addendum. If any provision of this Addendum contradicts, directly or indirectly, the Standard Contractual Clauses, the Standard Contractual Clauses shall prevail.

**F. Security:** Each party shall implement and maintain appropriate technical and organizational measures to protect the Personal Data in their possession or control from accidental or unlawful destruction loss, alteration, or unauthorised disclosure or access (a "**Security Incident**") and to preserve the security and confidentiality of such Personal Data.

**G. Cooperation and data subjects' rights.** In the event that either party receives: (i) any request from a data subject to exercise any of its rights under Applicable Data Protection Law (including its rights of access, correction, objection, erasure, restriction or data portability, as applicable); or (ii) any other correspondence, enquiry or complaint from a data subject, regulator or other third party in connection with the processing of the Personal Data (collectively, "Correspondence"), then where such Correspondence relates to processing conducted by the other party, it shall promptly inform the other party and the parties shall cooperate in good faith as necessary to respond to such Correspondence and fulfil their respective obligations under Applicable Data Protection Law. Each party shall provide reasonable assistance to the other as may be required in order to enable each party to perform its responsibilities pursuant to this Addendum and the Applicable Data Protection Law. *Sept 2021*



# EXHIBIT G



101 California Street
Suite 4200
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S, Figueroa Street
Gardena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **271460** |
| **Invoice Date:** | **04/26/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-175NA** |
| **Assignment Title:** | **CHRO** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---:|
| Professional Services (First Interim Fee) | USD | 46,666.00 |
| Administrative Charge | | 3,000.00 |
| **Total Amount Due** | **USD** | **49,666.00** |

Billing Inquiries: Dyson,Morgan

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

---

Please remit payment, via Wire Transfer to:

| | |
|---|---|
| Account Name | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A |
| Account Number | 31467981 |
| Routing Number | 021000089 |
| Swift Code | CITIUS33 |
| Bank Address | 111 Wall Street |
| | New York, N.Y. 10043 |

Alternatively checks can be sent to:

Russell Reynolds Associates, Inc.
PO Box 1678
Carol Stream, IL 60132-1678

Email remittance to:
arsupport@russellreynolds.com

# EXHIBIT H



101 California Street
Suite 4200
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S, Figueroa Street
Gardena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **271461** |
| **Invoice Date:** | **06/06/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-175NA** |
| **Assignment Title:** | **CHRO** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---|
| Professional Services (Second Interim Fee) | USD | 46,666.00 |
| Administrative Charge | | 3,000.00 |
| **Total Amount Due** | **USD** | **49,666.00** |

Billing Inquiries: Dyson,Morgan

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

| Please remit payment, via Wire Transfer to: | Alternatively checks can be sent to: |
|---|---|
| | |

| | | |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

# EXHIBIT I



**Russell Reynolds ASSOCIATES**

101 California Street
Suite 2900
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S, Figueroa Street
Gardena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **271462** |
| **Invoice Date:** | **07/19/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-175NA** |
| **Assignment Title:** | **CHRO** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---:|
| Professional Services (Third Interim Fee) | USD | 46,668.00 |
| Administrative Charge | | 3,000.00 |
| Candidate Expenses | | 225.95 |
| Other Assignment Related Expenses | | 153.86 |
| **Total Amount Due** | **USD** | **50,047.81** |

Billing Inquiries: Dyson,Morgan

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

---

| Please remit payment, via Wire Transfer to: | Alternatively checks can be sent to: |
|---|---|
| | |

| | | |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

# EXHIBIT J



101 California Street
Suite 4200
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S, Figueroa Street
Gardena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **275686** |
| **Invoice Date:** | **09/20/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-175NA** |
| **Assignment Title:** | **CHRO** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---|
| Candidate Expenses | USD | 498.80 |
| Other Assignment Related Expenses | | 153.86 |
| **Total Amount Due** | **USD** | **652.66** |

Billing Inquiries: Dyson,Morgan

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

---

| Please remit payment, via Wire Transfer to: | Alternatively checks can be sent to: |
|---|---|
| | |

| | | |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |

# EXHIBIT K



101 California Street
Suite 4100
San Francisco, CA 94111-5829 USA
Telephone  +1-415-352-3300

# INVOICE

Timothy Vo
Senior Manager, Talent Acquisition
Faraday Future Inc.
18455 S, Figueroa Street
Gardena  CA  90248
United States

| | |
|---|---|
| **Invoice Number:** | **279227** |
| **Invoice Date:** | **12/20/2022** |
| Client Number: | 940065965 |

| | |
|---|---|
| **Assignment:** | **2204-175NA** |
| **Assignment Title:** | **CHRO** |
| Client PO Number: | 4300008973 |

| | | |
|---|---|---|
| Candidate Expenses | USD | 2,355.11 |
| **Total Amount Due** | **USD** | **2,355.11** |

Billing Inquiries: Dyson,Morgan

Kindly note that our invoices are payable within 30 days unless otherwise agreed. Please indicate our invoice number when paying.

---

| Please remit payment, via Wire Transfer to: | Alternatively checks can be sent to: |
|---|---|
| | |

| | | |
|---|---|---|
| Account Name | Russell Reynolds Associates, Inc. | Russell Reynolds Associates, Inc. |
| Bank | Citibank, N.A | PO Box 1678 |
| Account Number | 31467981 | Carol Stream, IL 60132-1678 |
| Routing Number | 021000089 | |
| Swift Code | CITIUS33 | Email remittance to: |
| Bank Address | 111 Wall Street | arsupport@russellreynolds.com |
| | New York, N.Y. 10043 | |